IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **NUECES COUNTY, TEXAS,**<br>    *Plaintiff,* | §<br>§<br>§<br>§ | |
| v. | §<br>§<br>§<br>§ | CIVIL ACTION NO. _____ |
| **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, INDIAN HARBOR INSURANCE COMPANY; QBE SPECIALTY INSURANCE COMPANY; STEADFAST INSURANCE COMPANY; GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA; UNITED SPECIALTY INSURANCE COMPANY; LEXINGTON INSURANCE COMPANY; PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY; INTERNATIONAL INSURANCE COMPANY OF HANNOVER SE; OLD REPUBLIC UNION INSURANCE COMPANY; AMRISC, LLC; AGCS MARINE INSURANCE COMPANY; NESLON FORENSICS; FRANK BRAGANO; AND STEPHAN ASTROV,**<br>    *Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **[JURY DEMANDED]** |

## DEFENDANTS' NOTICE OF REMOVAL

COME NOW, Defendants, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON subscribing to Policy No. AMR-37950-03, each for themselves alone and no other, severally not jointly, based on their own respective percentage of interest, incorrectly named as "Certain Underwriters at Lloyd's, London"; Indian Harbor Insurance Company; QBE Specialty Insurance Company; Steadfast Insurance Company; General Security Indemnity Company of Arizona; United Specialty Insurance Company; Princeton Excess and Surplus Lines Insurance Company; HDI Global Specialty SE (formerly known as International Insurance Company of Hannover SE);

1

PD.27826218.1

Old Republic Union Insurance Company; ("Insurer Defendants" or "Underwriters"); Frank Bragano; and Stephen Astrov; ("Non-Insurer Defendants") (Insurer Defendants and Non-Insurer Defendants collectively referred to herein as "Defendants"), without waiving any affirmative defenses or objections herein, including, but not limited to, those defenses available under Rules 8 and Rules 12 of the Federal Rules of Civil Procedure and without waiving Defendants' right to seek dismissal and compel arbitration of this dispute pursuant to the arbitration clause contained in the subject insurance policy, which requires disputes between the parties to be submitted to arbitration, hereby removes this cause (bearing Cause No. 2020CCV-60004-4) from the County Court at Law Number 4 of Nueces County, Texas to the United States District Court for the Southern District of Texas and would show as follows:

1. **Basis for Removal.** Removal is supported by federal question under 28 U.S.C. §§ 1441 and 1446. Defendants assert that there is a valid arbitration clause that falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), and therefore this Court has original jurisdiction pursuant to 9 U.S.C. §§ 202–03, 205. In removing this cause, Defendants specifically preserve and do not waive any affirmative defenses whatsoever, including but not limited to any Rule 12 affirmative defenses, service of process and personal jurisdiction defenses, venue defenses, and the defense that Plaintiff's complaint fails to state a claim upon which relief can be granted. Defendants also specifically preserve and give notice of their right to seek dismissal and to compel arbitration of this dispute. Defendants will be filing a dispositive motion seeking that relief subsequent to the removal of this cause.

2. The policy sued upon provides for arbitration as follows:

### SECTION VII - CONDITIONS

\* \* \* \*

C. ARBITRATION CLAUSE: All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.

Unless the parties agree upon a single Arbitrator within thirty days of one receiving a written request from the other for Arbitration, the Claimant (the party requesting Arbitration) shall appoint his Arbitrator and give written notice thereof to the Respondent. Within thirty days or receiving such notice, the Respondent shall appoint his Arbitrator and give written notice thereof to the Claimant, failing which the Claimant may nominate an Arbitrator on behalf of the Respondent.

Should the Arbitrators fail to agree, they shall appoint, by mutual agreement only, an Umpire to whom the matter in difference shall be referred.

Unless the parties otherwise agree, the Arbitration Tribunal shall consist of persons employed or engaged in a senior position in Insurance underwriting or claims.

The Arbitration Tribunal shall have power to fix all procedural rules for the holding of the Arbitration including discretionary power to make orders as to any matters which it may consider proper in the circumstances of the case with regard to pleadings, discovery, inspection of documents, examination of witnesses and any other matter whatsoever relating to the conduct of the Arbitration and may receive and act upon such evidence whether oral or written strictly admissible or not as it shall in its discretion think fit.

All costs of the Arbitration shall be in the discretion of the Arbitration Tribunal who may direct to and by whom and in what manner they shall be paid.

The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance.

The Arbitration Tribunal may not award exemplary, punitive, multiple or other damages of a similar nature.

The award of the Arbitration Tribunal shall be in writing and binding upon the parties who covenant to carry out the same. If either of the parties should fail to carry out any award the other may apply for its enforcement to a court of competent jurisdiction in any territory in which the party in default is domiciled or has assets or carries on business.

3. Defendants, through their counsel, invoked their right to arbitrate the matters in dispute via letter dated January 31, 2020. Regardless of whether any demand for arbitration has been made, the fact that suit has been filed for claims related to the policy and/or losses allegedly covered under the policy warrants removal under the Convention.

4. **The State Court Action**. The state court action which is removed to this Court is styled the following: *Nueces County, Texas v. Certain Underwriters at Lloyd's, London; Indian Harbor Insurance Company; QBE Specialty Insurance Company; Steadfast Insurance Company; General Security Indemnity Company of Arizona; United Specialty Insurance Company; Lexington Insurance Company; Princeton Excess and Surplus Lines Insurance Company; International Insurance Company of Hannover SE; Old Republic Union Insurance Company; AmRisc, LLC; AGCS Marine Insurance Company; Nelson Forensics; Frank Bragano; and Stephan Astrov*, in the County Court at Law Number 4 of Nueces County, Texas, Cause No. 2020CCV-60004-4. Plaintiff alleges that Defendants failed to comply with their common law and statutory obligations arising from their insurance contract with Plaintiff. Underwriters do not admit the underlying facts alleged by Plaintiff and expressly deny liability to Plaintiff. A copy of the state court filings will be filed with the Court in the time provided under the Federal Rules and are otherwise attached hereto as Exhibits A–L-1.

5. **Propriety of Removal**. This action is properly removed under 28 U.S.C. § 1441 and 9 U.S.C. § 205 to the U.S. Southern District of Texas, as the district embracing the County Court at Law Number 4 of Nueces County, Texas in which the state court action was pending.

6. The Convention is an international treaty that guarantees citizens of signatory countries the right to enforce agreements to arbitrate disputes. As the Supreme Court has explained, "[t]he goal of the convention, and the principal purpose underlying American adoption

and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements and international contracts and to unify the standard by which the agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 520 n.15 (1974). Over one hundred countries have signed the Convention, including the United States, the United Kingdom of Great Britain and Northern Ireland, and Germany. In 1970, Congress enacted Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201–08 ("Convention Act"), in order "to establish procedures for our courts to implement the Convention." *McDermott Int'l, Inc. v. Lloyd's Underwriters of London*, 944 F.2d 1199, 1208 (5th Cir. 1991).

7. The Convention Act is part of the Arbitration Act, 9 U.S.C. § 1 et seq. Chapter 1 of Title 9 is the Federal Arbitration Act ("FAA"). Chapter 2 of Title 9 is the Convention Act. Section 208 of the Convention Act incorporates the FAA into the Convention Act to the extent the FAA is not inconsistent with the Convention Act or the Convention. *See* 9 U.S.C. § 208.

This cause is properly removed based on a federal question, the FAA, and the referenced provisions of the Convention Act, including but not limited to § 202, which provides the following:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section, a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

Article II of the Convention further clarifies which arbitration agreements are subject to the Convention. Article II states, in pertinent part, the following:

1. Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

2. The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams.

Section 205 of the Convention Act additionally provides the following:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal.

9 U.S.C. § 205.

8. The Fifth Circuit has recognized that any dispute under an insurance policy containing an arbitration clause with an international party is subject to arbitration under the Convention. For example, in *Acosta v. Master Maintenance & Const., Inc.*, 452 F.3d 373, 380 (5th Cir. 2006), the Fifth Circuit held that removal under the Convention was proper where the plaintiffs' claims for exposure to mustard gas "related to" the dispute that was subject to arbitration under the liability insurance policy sued upon via the Louisiana Direct Action Statute. *See also Sphere Drake Ins. PLC v. Marine Towing, Inc.*, 16 F.3d 666, 669 (5th Cir. 1994). The threshold for determining whether a dispute "relates to" an arbitration provision governed by the Convention is exceedingly low. *See Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002) ("Whenever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement 'relates to' the plaintiff's suit sufficient for removal jurisdiction."); *see also Outokumpu Stainless USA,LLC v. Converteam SAS*, 902 F.3d 1316, 1323 (11th Cir. 2018)

(joining Fifth Circuit); *Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 844 (8th Cir. 2012) (same); *Infuturia Global Ltd. V. Sequus Pharms., Inc.*, 631 F.3d 1133, 137–38 (9th Cir. 2011) (same).

9.   Here, Defendants severally subscribe to the policy issued to Plaintiff. In *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853 (5th Cir. 2003), the Fifth Circuit explained that Lloyd's of London "is not an insurance company but rather a self-regulating entity which operates and controls an insurance market." *Id.* at 857 (internal citation omitted). The Lloyd's entity "provides a market for the buying and selling of insurance risk among its members who collectively make up Lloyd's." *Id.* at 857–58 (internal citations omitted). Thus, "a policyholder insures *at* Lloyd's but not *with* Lloyd's." *Id.* at 858 (internal citations omitted). The "members or investors who collectively make up Lloyd's are called 'Names' and they are the individuals and corporations who finance the insurance market and ultimately insure risks." *Id.* (internal citation omitted). As such, Names are the underwriters of Lloyd's insurance, and they invest in a percentage of the policy risk. *Id.* Typically, "hundreds of Names will subscribe to a single policy, and the liability among the Names is several, not joint." *Id.* (internal citation omitted). "In order to increase the efficiency of underwriting risks, a group of Names will, for a given operating year, form a 'Syndicate' which will in turn subscribe to policies on behalf of all Names in the Syndicate." *Id.* However, the "Syndicates themselves have been said to have no independent legal identity. Thus, a Syndicate is a creature of administrative convenience through which individual investors can subscribe to a Lloyd's policy. A Syndicate bears no liability for the risk on a Lloyd's policy. Rather, all liability is born by the individual Names who belong to the various Syndicates that have subscribed to a policy." *Id.* (internal citation omitted). Each Syndicate appoints a managing agent, which is typically a legal entity, who appoints one of its employees to serve as the "active underwriter" for the Syndicate. *Id.* (internal citations omitted). The active underwriter has the

authority to buy and sell insurance risks on behalf of all of the Names, as well as the ability to bind them in these transactions. *Id.* (internal citation omitted).

10. In this case, a portion of the policy is subscribed to by HDI Global Specialty SE (formerly known as International Ins. Co. of Hannover SE), which is not a citizen or resident of Texas or any other state within the United States. HDI Global Specialty SE is registered under the laws of Germany and has its principal place of business in Hannover, Germany.[1] Another portion of the policy is subscribed to by Syndicate 510, which is an unincorporated association that is not a citizen or resident of Texas or any other state within the United States. The managing agent of Syndicate 510 is Tokio Marine Kiln Syndicates Limited, and the majority corporate member is Tokio Marine Kiln Group Limited, which is registered in England and Wales with its principal place of business in London, England. The mere presence of HDI Global Specialty SE and Syndicate 510 in the litigation warrants removal. Furthermore, as to the portion of the risk assumed by other underwriters under the policy, certain of these parties must also be considered citizens of countries other than the United States. Therefore, there can be no question that the dispute involves parties that are citizens of countries other than the United States.

11. The remaining components required for application of the Convention are likewise satisfied. *See generally Beiser*, 284 F.3d 665; *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140 (5th Cir. 1985). The entirety of the dispute filed by Plaintiff against the Defendants "relates to" the policy, which includes the mandatory enforcement of the arbitration provision requiring that arbitration be held in New York and under New York law due to the presence of multiple parties that are citizens of countries other than the United States. Under Texas law, arbitration provisions contained in insurance agreements have been upheld, particularly when

---

[1] This is an incomplete list of the underwriters participating on the risk. The list is not intended to be exhaustive, but merely to demonstrate that participating entities are citizens of countries other than the United States.

the FAA is triggered. *See Ranchers and Farmers Mut. Ins. Co. v. Stahlecker*, No. 09-10-00286-CV, 2010 Tex. App. LEXIS 8797, at *3–*11 (Tex. App.—Beaumont Nov. 4, 2010, no pet.). Thus, there is no basis upon which to argue state law prohibits application of the Convention Act.[2]

As such, the necessary elements for removal under the Convention have been satisfied.

12. **Timeliness**. Section 205 of the Convention expressly states that the case may be removed on this basis "at any time before trial." 9 U.S.C. § 205; *see also Acme Brick Co. v. Agrupacion Exportadora de Maquinaria Ceramica*, 855 F. Supp. 163, 166 (N.D. Tex. 1994). As such, removal is timely.

13. **Consent to Removal by All Defendants.** This cause has been removed by or with the consent of all Defendants through undersigned counsel.

14. **Notice to Others**. In accordance with 28 U.S.C. § 1446(d), Defendants will promptly give notice to all parties in writing and shall file a copy of the notice of removal with the clerk of the state court.

15. Pursuant to 28 U.S.C. § 1446(a) and Local Rule 81, a copy of the state court docket sheet, an index of matters being filed, a list of all counsel of record, and all process, pleadings, orders, are attached hereto as Exhibits A, A-1, B, C, D, E, E-1, F, G, H, I, J, K, L, L-1and M respectively.

WHEREFORE, Underwriters respectfully remove the above-entitled action from the County Court at Law No. 4 of Nueces County, Texas to the United States District Court for the Southern District of Texas, Corpus Christi Division.

---

[2] Though Defendants would disagree with the result contained therein, *Stephens v. American Int'l Ins. Co.*, 66 F.3d 41 (2d Cir. 1995) is distinguishable. In *Stephens*, the applicable state's laws prohibited enforcement of an arbitration provision in an insurance agreement, and the Second Circuit concluded the Convention Act was reverse-preempted by the state law. This principle has been rejected by the Fifth and Fourth Circuits. *See Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's London*, 587 F.3d 714, 718 (5th Cir. 2009) (holding that the McCarran–Ferguson Act reverse-preemption rule applies only to federal statutes and not to treaties); *ESAB Group v. Zurich Ins.*, 685 F.3d 376, 385–88 (4th Cir. 2012).

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:  */s/ Paige C. Jones*
Paige C. Jones
Attorney-In-Charge
Texas Bar No. 24054609
paige.jones@phelps.com
115 Grand Avenue, Ste. 222
Southlake, Texas 76092
Telephone: (817) 488-3134
Telecopier: (817) 488-3214

Ashley M. Parker
Texas Bar No. 24081085
ashley.parker@phelps.com
Chad W. Schreiber
Texas Bar No. 24085732
chad.schreiber@phelps.com
PHELPS DUNBAR LLP
500 Dallas Street, Suite 1300
Houston, Texas 77002
Telephone: (713) 626-1386
Telecopies: (713) 626-1388

**ATTORNEYS FOR DEFENDANTS**

**OF COUNSEL:**
Christopher A. Langston
Texas Bar No. 24106185
christopher.langston@phelps.com
PHELPS DUNBAR LLP
500 Dallas Street, Suite 1300
Houston, Texas 77002
Telephone: (713) 626-1386
Telecopies: (713) 626-1388 .

## CERTIFICATE OF SERVICE

  I hereby certify that a true and correct copy of the foregoing instrument has been served upon all known counsel of record as listed below by placing a copy of same in the United States mail, certified, return receipt requested, electronically, and/or hand delivery on March 4, 2020.

| | |
|---|---|
| Robert C. Hilliard<br>Catherine D. Tobin<br>John B. Martinez<br>Marion Reilly<br>HILLIARD MARTINEZ GONZALES LLP<br>719 S. Shoreline Blvd.<br>Corpus Christi, Texas 78401\<br>*COUNSEL FOR PLAINTIFF* | VIA CM/RRR: 7016 1970 0001 1488 0335<br>& VIA E-FILE NOTIFICATION:<br>bobh@hmglawfirm.com<br>catherine@hmglawfirm.com<br>john@hmglawfirm.com<br>marion@hmglawfirm.com |

*/s/ Paige C. Jones*